Good afternoon, Your Honors. Cal Schroederke of Kirkland & Ellis, pro bono amicus for petitioners. I'm joined at council table by Tony Jackson and Mark Kramer, also of Kirkland & Ellis here. Petitioners retained counsel is not appearing today, so I won't be splitting a lot of time with them. However, I would like to attempt to reserve four minutes for rebuttal, if possible. Yes, it's possible. Keep an eye on the clock. This court recognizes the special skills and experience of immigration attorneys and the duty, the constitutional duty they owe their clients to exercise those skills. Here, the record demonstrates a failure to exercise those skills by retained counsel and a failure to provide effective assistance for the agency. Let me just say at the beginning, I know that you're here as amicus, and I know we asked you to brief the ineffective assistance of counsel issue. But don't think that that's all we're interested in. I mean, we're going to consider the whole case, and you may have been appointed because we needed an independent view of ineffective assistance. But we're really here to hear the whole case today, so I hope you're going to argue all the issues of significance. Thank you, Your Honor. I do have arguments on all of them. And in this particular matter, if you're really going after ineffective assistance of counsel, I guess the big problem that I have with going after that, rather than going after other arguments, which I think are more to your benefit, are that nobody challenged counsel. Despite invitation by the IJ, nobody's raised that in front of the BIA, and I guess I'm having a tough time understanding why we go to it now. Your Honor, certainly that comes out in the briefing that this issue has kind of rode all the way through to this point. However, certainly there is jurisdiction to hear the issue, as detailed in the briefs. And I think that what we have here is we actually have a pretty complete record. Well, even if we had jurisdiction, it's a little bit hard to determine the ineffective assistance of counsel when we don't even know what was said between the plaintiffs and counsel, and counsel continues to be their counsel. Yes, Your Honor. What we do have is we do have a record before an IJ who is effectively, you know, probably the foremost expert out there on what constitutes good performance of counsel in the immigration course and the standard of care in the immigration course. And clearly the IJ in this matter was struck by the abject failure of retained counsel to do even the most rudimentary things. Well, he was certainly concerned, but even he didn't say ineffective assistance of counsel. Did he? No. The court said that it may have an ineffective assistance of counsel situation. I think that the court below was not certain it could even reach the issue because of the matter of attorney-client privilege and how to deal with that. It's unclear from the record. However, what is clear from the record is that counsel below did fail to, absolutely failed to investigate the case. They didn't look at, a cursory review of the documents in the record shows, as the IJ noted, that there are tremendous inconsistencies about whether the Petitioners were in Northern California or Southern California during that first part of 2003. I would hope you'd move on. I think you've got some good advice from my colleague, and he's telling you what I think as well. Well, Your Honor, certainly aside from the IAC issue, there are, there are bases for this court to grant relief to both of the Petitioners. As to Petitioner Ortega, there's, we have the intervening Pergozo case that shoots down the BIA and the IJs. There's a legal conclusion about whether she had committed a categorical crime of child abuse. So that. Then you have a supervening Soram case here. Yes, Your Honor. Although there is this, Soram didn't discuss this, the, the, a couple of grounds that were discussed in Pergozo, or in fact, it actually adopted some of the grounds in Pergozo. Soram, in the first instance, dealt with a Colorado statute that was more definite than the California statute at issue here. And so, and so because it struck some and it, or it contradicted some and some it didn't, do we send it back to the BIA to determine what to do? No, Your Honor, because the Ninth Circuit has already opined on, on the defects in 273AB and, and found that a conviction under 273, California Penal Code 273AB is not a categorical crime of child abuse. So in light of that, that decision, Soram doesn't, Soram doesn't say anything different. Soram says this Colorado statute is, is, you know, it analyzes the Colorado statute. So, you know, and, and as happens with these categorical analyses, it's, it's a state law by state law determination. We have a California law that the Ninth Circuit's already spoken of. So. Well, it's spoken to child abuse. I don't see anything in our decision that speaks to child neglect or child abandonment. But the decision. Which Soram did. Yes, but Soram dealt with different statutory language, Your Honor. And, and the categorical analysis looks at whether a statute is categorically, that is, as sort of the platonic ideal, that thing is a, fits with the Federal definition. And that, it found that, that the California statute did not. And so what review do I give to this particular analysis, if I'm going to make it myself? Does it need to be a actual injury or not? In order for, for, for there to be, to, to be a categorical crime of child abuse, there would have to be a, a, some more concrete risk of harm. The risk of harm analysis was already done in Fregoso, and this Court found that that statute did not require enough of a risk of harm to meet the categorical requirements, while the Colorado statute did. So I, I don't think that there's any more analysis to be done in looking at her conviction. It's a one-page document. That's all we know is she was convicted of this crime. And under our opinion, by Judge Berzon, that crime includes such things as not putting a railing around the bed, or letting the child wander toward a swimming pool, or wander even into the street. I guess if you're on the swimming pool, not putting a fence around it, or letting your child wander out where he or she could get into the street. Yes. Those are, you know, there, there are many hypothetical potential situations where there could be a risk of harm. And the, the California statute simply isn't concrete enough to, to fit into that. And according to her story, she almost, it's almost as if she read the opinion. If, if what she says is true, a child wanders near a street or intersection. Well, if what she says is true, the boy was sick, she didn't want to take him with her, she drives the daughter to school, takes maybe half an hour or more, but while she's gone, the boy walks outside and the neighbor picks him up, calls the police. Your Honor, that's, that's, that's what her testimony was. From the standpoint of the categorical analysis, that testimony doesn't come in. Of course. To determine whether the crime fits. Right. And it doesn't come in even under the modified categorical. You have a very limited universe of documents. I understand that, too. And what document would we review if we were to keep this and review it on a modified categorical? The modified categorical, Your Honor, I believe would, would need to be done by the first instance, although the government never developed a record on that. The documents that you can look at are. So you would be suggesting to us that if we get to the modified categorical, we ought to send it back to the BIA? If the court deems that the, that the government has not given up the, the right to get analysis under a modified categorical, I believe a remand is, is appropriate because the agency hasn't had an opportunity on that. And your argument is that the government has given it up because it was invited by the IJ to present records and it didn't do so? Yes, Your Honor. Is, is it possible that there's a broader thing that the government, whether invited to, by the IJ or not, had an obligation to introduce documents for modified categorical in case it should become relevant? Yeah. The Honor, I'm sorry, Your Honor, the, the, the government has the, the, the burden of proof is on the petitioner in these matters to prove that they meet all the parameters. But when the, if the government is seeking to overturn what's a prima facie qualified individual, then they, they do need to sort of bring, bring all their arguments to, to the party the first time. Yes. But isn't it on the petitioner to bring the documents from the record before the IJ? No, Your Honor. Well, aren't you seeking cancellation of removal? On, on a, on a, a criminal conviction, a petitioner is not required to scour the earth to find all the documents for the court. Well, I appreciate they don't have to scour the earth. I appreciate that if they don't get them in there and the government doesn't bring any, that the government's going to be bound, but doesn't, are you suggesting then in this particular instance that we're bound by the documents that are in the record? In this review right now? Absolutely. I mean, that's. As to the categorical approach? As to, yes, and. What about the modified? What if we send it back? To have an open record? Yeah. You, if, if the court deems that the government hasn't waived the right to bring a, a claim that, that this is a, a crime of, of child abuse under the modified categorical, then it, it could go back to the BIA for further development of the record. Could you help me understand more your waiver argument that the government has waived? I mean, I read what the IJ said. The IJ invited the government to investigate police reports and so on or to reopen if they found it. But then the IJ held that categorically this was a crime of child abuse. And if I'm the government at that point, I say, well, why should I bring in things relevant to modified categorical if I've just been told that I win because it's categorically a crime of child abuse? But, so, that, that's my difficulty with your waiver argument. Tell me why, nonetheless, there's waiver by the government. Well, Your Honor, I, I mean, it's, it's largely a prudential reason that, you know, if the government is, is, you know, going to bring a, a, you know, going to argue that you have a crime of, of child abuse that they need to make, you know, instead of doing it piecemeal and sending, you know, sending it up to the Ninth Circuit and bringing it back down and arguing, oh, well, we want to do the modified categorical if you don't agree with the categorical. It's a waste of time when, you know, they could easily ask the State for documents at, at the time, you know. And, in fact, here we're invited to. Again, it isn't even hypothetical. Well, I guess this is especially worrisome to me when in the interim between the two, we come up with this case Sandoval-Lua v. Gonzalez, which, in my book, changed the burden. It said the alien seeking to prove his eligibility for cancellation can carry his burden of establishing by preponderance of the evidence he's not been convicted when the alien produces an inconclusive record. We'd never had that decision on the books prior. And so I guess I'm trying to figure out, even in your hypothetical, how the they should have produced those records because an inconclusive record would be to your benefit. Sandoval-Lua says an inconclusive record of conviction goes to the alien. Prior to that, we didn't know that. So how could the government have been on notice that they had to put the records in or put all these records in the record given that we didn't know that the inconclusive record would go to the alien? You might want to think about that because you've got a minute and a half left. We'll give you the extra time, and you can think about answering Judge Smith's question, and if you've got it with you, you might read Fernandez-Ruiz. Yes, Your Honor. Thank you. Good afternoon. May it please the Court. Lindsay Murphy on behalf of the Attorney General. Your Honors, the government agrees that remand of Ms. Ortega's case is necessary for further consideration of her eligibility for relief. Are you sure you want to spend your time remanding this case and going through all of this again? Yes, Your Honor, because there are several outstanding issues here that need to be clarified by the Board in the first instance because the Board Not every case has to be the one to clarify legal issues. That's very true, Your Honor, but here the Board has special expertise regarding the interpretation Well, you've got some expertise, too. The Justice Department has some expertise. Everyone's got some expertise. Everybody's got a lot of things to do. That is true, Your Honor. Judge Smith, did you have a question? I was going to say, Counsel, it's of some interest to me that I have a case on the record that has a standard or a view in it on what I'm supposed to do in this case, and I don't have anything other than Ninth Circuit law, which it is, telling me what I'm to do in this case. And if I look very carefully at that and what it says, I guess it would be pretty easy, based on the standard in Pacheco, to say the government had lost. Well, looking strictly at what Pacheco says, yes, Your Honor. Well, why have I got to go look at Sorum? Because, Your Honor, the Board has the expertise on interpreting provisions. The Board has already interpreted, and based on that interpretation, the Ninth Circuit made a ruling, and it gave me a standard or a view that I'm to deal with. And to my knowledge, I guess I don't have anybody saying the Ninth Circuit's wrong. Well, actually, the Board, in matter of Sorum, did indicate that the Ninth Circuit's definition No, it didn't. It's a nice word, indicated. It didn't do that. It said in Colorado it's wrong. It said on a state-by-state analysis, in Colorado it's wrong. It didn't say anything about California. But the Board did clarify its definition, its interpretation of the term child abuse, and also broadened the definition to include child abuse, child neglect, and child abandonment. Well, but, again, if that's applicable, I guess one could look at it. But I'm having a tough time seeing how it's applicable. We find, and I quote, that a state-by-state analysis is appropriate to determine whether the risk of harm required by an endangerment-type statute in any given state is sufficient to bring an offense. And, therefore, it seems to me that the only precedent in front of me is Pacheco, and the government loses. Well, here I would urge the Court to give deference to the Board's definition of child abuse that was enunciated or announced in matter of sorum, because the Board there did indicate that harm or injury is not a requirement in order to constitute a crime of child abuse, child neglect, or child abandonment. And here, in matter of forgoso, this Court determined that it was, that harm or injury was required, and for that reason, it concluded that 237a)(b was not categorically a crime of child abuse. So there is some tension between the Board's definition of a crime of child abuse and this, the definition that the, this Court adopted in Forgoso. Let me ask you a second question. It seems to me there's no evidence in this record about moral character of the wife. The, the good moral character. It seems to me that if it's not a crime of child abuse, then there's no finding as to the wife. The, the fact that the... Is there any finding in the IJ's decision, or even in the BIA, that would suggest the wife didn't have moral character? There is a finding in, in both decisions. However, the Board determined, the immigration judge determined that she lacked good moral character on the basis of, of her lie in, during the immigration hearing. However, the Board determined it didn't consider that issue, and rather it rested its lack of good moral character. Because it didn't consider the issue, then it went to the crime, and if I don't agree on the crime, then we don't have anything. But it's not, the, the Board didn't find, make a lack of, a finding of a lack of good moral character on the basis that it was a crime of child abuse. It, it did so on the basis of, of the fact of the conviction. And just because her conviction may or may not categorically constitute a crime of And to the husband. The only, as I understand the husband, testimony that is an oral statement under oath would be something, a false oral statement under oath would be something that I might go and suggest that moral character is a problem. But I don't have anything here suggesting there was any statement, oral statement under oath, do I? You do. Mr. Hernandez said so during his immigration hearing. He admitted to lying to the asylum officer during his interview. Well, I'm not certain that that's the reason the IJ nor the BIA used the false statement during the hearing. It seemed to me in reading their decision that they're suggesting we're going with the statement in the application or the statement to the asylum officer. And the asylum officer's statement wasn't under oath at all. And I don't have anything in the record, in what I've read, to suggest that a Well, actually, Your Honor, the board did conclude that the respondent husband swore before an asylum officer that he lived in an address near Los Angeles during But that isn't under oath. We're not talking about the asylum officer because that wasn't under oath. His testimony before the asylum officer was under oath, Your Honor. In the Supreme Court in the matter of, excuse me, in the United States. What part of the record tells me for sure that that was under oath? The immigration judge actually made an express finding that that was under oath. Do I have anything to say? Well, all right. I guess my biggest problem with all of this is that on these particular issues, the best you can have is remand. I don't believe that remand is warranted in Mr. Hernandez's case. Well, I appreciate that. But all I'm trying to do is get you to the idea that when we're looking at whether it was a conviction, you've got a big road to hoe on whether I should apply Pacheco or whether I should go to a SORM case that only deals in Colorado law. You're suggesting I can borrow in and do whatever I need to do, but that would make I mean, I don't have the case that suggests that. I frankly don't have a case that would even tell me what I should do in order to give a standard or a view, because SORM suggests one standard, and I'm not sure that Pacheco even agrees with that standard. I agree that the two are in tension, Your Honor. And because the board is charged with interpreting the Immigration and Nationality Act in the first instance, they have the expertise. The board should be permitted the opportunity to apply a matter of SORM in this case. Let me come back to SORM and categorical and so on. As I read the combination of our panel decision in Fregoso and the board's decision in SORM, the board says in SORM, okay, basically, I mean, it's a little hard to get precisely the standard as to what SORM tells us is child abuse. We know for sure that SORM tells us that actual harm is not necessary, but some risk of harm will suffice. So this is now the board writing. A child unreasonably placed in a situation that poses a threat of injury to the child's life or health. Okay, that's one of them. Or a little later on, accordingly, to render the statute constitutional, that is to say the Colorado court rendering its statute constitutional, the Colorado court interpreted the phrase may endanger in the Colorado statute to mean that there is a reasonable probability that the child's life or health will be endangered from the situation in which the child is placed. Okay, that's and they say, okay, that is child abuse. Well, we know for sure that the California statute of child abuse encompasses this situation where a mother has a sick child whom she does not think it advisable to take in the car to school. The drive to and from school is half an hour. She comes back and it turns out the child got out of the house and a neighbor calls the police. That's her story. Now, I don't know for sure that that's what happened, but it seems to me that that is convictable under the California statute, given the description of the California statute, that we get out of Fragoso. Because Judge Berzon says, well, you can get a conviction for this, a parent's lack of attention as the child wanders near a street or intersection. I have enormous difficulty seeing parental inattention as a child wanders near a street or intersection as coming up to the standard of endangerment articulated in SORM under the Colorado statute. I just don't see that as child endangerment categorically. So I'm inclined to hold, if we're talking categorical, that there is no child endangerment under the California statute categorically, period. Now, you might get a remand as to what actually happened, but I have a sneaking suspicion that when you go back down there and you look at judicially admissible or cognizable documents under categorical, you're going to end up with exactly the story that she tells you, which can't come in, but you can't prove that there's anything other than that. Why do you want to do that? Because it's the board, because the board has the expertise to determine this issue. The board has the expertise to determine what? The scope of the California statute? No, they have no expertise on that. No, they don't. We do not defer to them on that. And I agree, I agree fully. They have expertise to determine what is or is not categorical, what actually did happen or didn't happen. That's not the question I'm asking about expertise. I'm saying that strikes me as a totally hopeless enterprise on your part. Why do you think it's even worth your while to go down and see if there are going to be any documents? This is clearly treated as a misdemeanor. We've got one sheet where some boxes are checked out in the parenting class. Any experienced lawyer looking at that is going to say, I'm never going to find any judicially cognizable documents for purposes of modified categorical. There's going to be a police report maybe. You know darn well the police reports are not admissible. I mean, you're going to find nothing. Well, the board does have the expertise to determine what constitutes child abuse. And as yet they have not. Well, it's already told us. They still have not, they have not set the outer limits of the definition. You know what the California statute does, as the Court, this Court says? It makes criminal conduct that creates only the bare potential for non-serious harm to a child. And that's not what the board was talking about in Solom or Sora. The board was not saying that. It said there are some kinds of statutes. Now, you know, the board could, and some are okay and some are not. Now, if there's ever a statute that isn't, it's one that causes a bare potential for non-serious harm. Now, I think as Jed Fletcher has indicated, you can't get anywhere by going back to the board. Furthermore, the board knew there was a Ninth Circuit decision when it wrote this sort of general essay about what kinds of things are good or bad. And it said there are some states that are okay, some that aren't. But it knew there was a California decision and it left it in effect. Now, you know, I don't see why we should assume they were overruling one of our decisions if when they took this general thing they listed all the states and they raised no objection to the California decision. So I don't see, any more than my colleagues have raised the question, I don't see why we should disregard one of our decisions that the board in its discussion of this entire subject in no way suggested was incorrect. Well, Your Honor, it did suggest that it was incorrect in the sense that the Ninth Circuit interpreted the statute, the immigration statute as requiring harm. But not the statute as a whole. I mean, yes, requiring harm. But we did far more than say that. But because the California statute was not at issue in that case, the board couldn't leave and determine that, or make a decision as to the California statute because the Colorado statute was the issue before that. Actually, I agree with you on that one. But it does appear to me that what the board thought it was doing in Sorem was telling us, okay, here's where the line is. If there's this degree of endangerment, it's child abuse. If it's not this degree of endangerment, it's not child abuse. Now, you could argue, well, they're, you know, they're biting the leg off one bite at a time, and pretty soon we're going to find that the barest hint of any slight danger to any child is going to be child abuse, so that the California statute's included. But I just don't think that's even a remotely reasonable reading of Sorem. So it seems to me, I'm speaking only for myself, that the California statute just cannot be read, even after Sorem, categorically as child abuse. It's possible in certain circumstances, of course, under the modified categorical approach, someone's been convicted of child abuse under California law, and they did something that is child abuse. But I repeat to you, just as a matter of just lawyering experience, looking at a misdemeanor such as this, where a parenting class is required, and time served is the only sentence, time served meaning just the time she spent at the police station while they're trying to figure out what to do with her, that you're going to find any documents that take you out of categorical approach into modified categorical. You're going to find her police report, maybe. And if you find a police report, it's not admissible. It's just not going to be there. I guess what we're trying to do is we're trying to lay out, if there's anything to tell us different, we're glad to look at it. We're not trying to do it any different. But I guess my worry is it would seem to me this is a case for the government to go mediate. Has the government even tried? Mediation has not been on the table, no, Your Honor. Why? I think that this is a clear issue, Your Honor. Well, it doesn't seem to me very clear. That's what we're trying to point out to you. It doesn't seem very clear at all to us. Or I'll say it to me. On the categorical approach, it's crystal clear. Well, if I'm applying Pacheco, it's crystal clear to me, too. But I guess my worry is that based on what you have in front of you, I mean, do you have any authority to say the government will go mediate this? Can we or do we have to throw it into mediation on our own idea? Well, I don't have authority to say that the government will mediate this. But I think the fact that the board did not have an opportunity to apply the modified categorical approach in the first instance should. Well, I would say to you the same thing I said to your opposing counsel. If you happen to have Fernandez-Ruiz, I would read that because my own view of that and I was on that court and we had a six to five vote with a very long discussion of this question, that when the board does have an opportunity to or the government has an opportunity, when it's before the IJ, to introduce any documents, even though it thinks that the categorical approach is all it needs, and even if it thinks that the IJ is going to rule that there's a categorical approach, it can't wait until afterwards and it can't wait until it gets into the court of appeals to say, well, we should have had an opportunity to introduce other documents. We thought it was just going to be categorical. And in this case, it's much stronger for your opponents than it was in Fernandez-Ruiz, because here they asked you, do you have any papers? Do you want to introduce them? And the government said no. But I don't know that my colleagues agree with me, but I do know what Fernandez-Ruiz says, and I know how we got there, and I know what the arguments were, and I know what it says. And as far as I'm concerned, you had the opportunity. You were asked you can't wait and get a categorical decision and then say, well, okay, we had a categorical one, so we didn't know that we should have introduced those other papers. But that's another question. Now, Oberst, I want to ask you finally, are you familiar with the Homeland Security memo of June 17th? Yes, Your Honor. The Morton memo that came out last Friday? Yes. Yes, Your Honor. And has the Justice Department considered reviewing this case in light of that memo? That memo is guidance to the Immigration and Customs Enforcement personnel. So that is not directly applicable to us or to the Board of Immigration Appeals or to the immigration judge who will fall within the Department of Justice? Well, I can't say. I'm sorry. I don't see how you say it's not applicable to the immigration judge or to the ---- Every time, you know, the government justice department doesn't want to do something, they say to us, well, that's up to the Department of Homeland Security. You know, we may agree with you on this case, but it's Department of Homeland Security. Now you're saying that this memo, and you have no authority under the Department of Homeland Security's memo to do anything about this case? Well, I would like to answer. I see my time is up. Yes. Okay. So if you'll permit me to answer this last question. Sure. This is an issue, or even if we did have authority to find this, the Morton memo applicable to the Department of Justice components, the fact here that one Petitioner has a criminal conviction and that another Petitioner has admitted to lying under oath during his asylum office interview. I'm not sure he admitted to lying under oath. Is it that in the record? The immigration judge found that he admitted to lying under oath. He admitted telling the asylum officer that he lied about his address. Again, there is no record. There is no document in the record to suggest that. All we have is a bare assertion by the immigration judge. Isn't that correct? I wouldn't qualify it as a bare assertion, but it is. Well, we don't have any evidence on the record to even know whether the immigration judge had anything to say about that. We don't know why he came to that conclusion. All we know is there's a bare assertion that he was under oath. But I looked all over to try to find the document to give him credence, and I guess I'm not finding it. That's the worry that I have in this particular situation. I think that was in Mr. Hernandez's testimony when he specifically stated that he told the asylum officer that he lives in an address that he, in fact, never looked at. Yes, but the question is oath, not what he said, but whether it was under oath. Yes, and I believe it's in the United States v. Cungus case that stated that during statements given to an asylum or to an immigration officer are considered to be statements under oath, is considered to be testimony. Let me ask you this. Given that the counsel even raises this ineffective assistance of counsel, and I tried to suggest that I didn't think it was appropriate here, but the alien could raise ineffective assistance of counsel, could they not again? He could raise it through a motion to reopen filed with the Board of Immigration Appeals. Okay, so he files it as a motion to reopen. Given what the IJ said in the record about this, doesn't that give the government concern about ineffective assistance of counsel on a motion to reopen? The immigration judge certainly was unhappy with retained counsel's performance, and I think that would benefit Mr. Hernandez in his motion to reopen. Well, I guess you didn't want to answer my question. I didn't ask you if it would benefit him. I said, doesn't that give the government concern that the IJ said on the record what he said about this counsel on an ineffective assistance of counsel claim and a chance to motion for reopening on that particular situation? Of course it does. But the fact that despite what the immigration judge said multiple times on the record, Mr. Hernandez has still never submitted a claim or never moved to reopen to the board. He never claimed in the first instance on his appeal to the board that he had been the victim of ineffective assistance of counsel. Would that be another reason? Maybe the government ought to think about mediating this case? I don't think. I mean, it seems to me, and I'm just this common, ordinary guy from Idaho. You know better than I do. But it seems to me with all these issues going against the government, all these issues which could have the government lose this case, and frankly I don't think it's that big a case anyway from what facts we have here, that this would be a great case for the government to either adopt what my colleague has suggested with a new memo or at least mediate and try to work this out to arrive at a good conclusion for both parties. Well, I think the fact that we don't we really don't know what went on between Mr. Hernandez and retained counsel. There's no record whatsoever for the court or the Department of Justice to really sit down and look at. And because of that, there's, there's. Yeah. We can make a pretty good guess, as I.J. Weber made a pretty good guess, that the attorney simply didn't prepare for the testimony of her client because had the attorney done so, any competent attorney would have said, you know what, this is a phony story that the notario got you to say, and you can get yourself out of trouble by recanting right now. And the I.J., Judge Weber, she's a very good I.J. She sees this stuff all the time. She says, I just can't believe that you did your job. And then she says, but of course, attorney-client privilege, I'm not asking you. But she knows darn well what didn't go on, which was to say what didn't go on was the work that the lawyer should have done. Well, Your Honor, it's entirely possible that the lawyer did tell this to Mr. Hernandez, but that Mr. Hernandez decided to continue lying anyway, and it took, you know. You know, I kind of doubt that. But, I mean, I wasn't there. But that strikes me as entirely improbable. When you go back to Washington and tell them our discussion about mediation, which we may have more information for you on shortly, you might like to be aware that we got a letter from the Justice Department, I think yesterday or the day before, asking that a case be mediated in light of this memorandum of whatever it is, June 17th, from the Department of Homeland Security. They asked us not to hear an oral argument because the case was obviously one that was suitable for mediation. So they seem to think that the Justice Department seems to believe that the memorandum has some effect on how they handle cases. Yes, Your Honor. Actually, I was one of the attorneys who submitted a joint motion to the court jointly with the Petitioners' Council. Because of this memorandum. Yes, and because of the ---- So it does have some effect on what the Justice Department does. Well, that stemmed from concern raised by Immigration and Customs Enforcement of the case in light of the new memo. Yes. Okay. Well, you might encourage them to listen to this oral argument and see if they have concerns. And all such elements could happen as a result of the concerns the court has, as well as those of ICE or Homeland Security. We're all the same, all friendly people. Frankly, we appreciate your argument. But I guess from my point, and I'm not representing them, I was just trying to point out to you with my questioning the kind of things that worry me in this case if I had to make the decision. And to have you respond to them, which I took your response. And most of the time, probably the best response you could have given, but I'm not sure it satisfied my concerns. And that's all I was trying to do here. And we all have to come to a decision if you don't mediate. But I think there's enough of a concern here that it might be something the government will look at. And frankly, I do this totally on myself because I remember being a DJ and having people in front of me. And they had a case that I thought shouldn't go to the jury, shouldn't really get to the ultimate result. They could make a better decision about that than I could. And so I told them the same kind of stuff. So you're getting the same stuff from me here. But thank you. Well, I would add that Judge Smith has emphasized for your consideration the legal problems you have and the strong possibility. In theory, there's a possibility that you have serious legal problems and could lose the case. I was trying to emphasize that in addition to that, you have serious justice problems with whether you should pursue this case. And maybe with a fuller discussion in mediation, you'll determine things that you didn't determine on the record. And you may be more interested in coming to a resolution if you know more of the facts that we can't give you. And Judge Fletcher has given you some guesses as to what the facts may be. But that's one of the things mediation offers. It gives you a chance to go beyond the record and discover facts. I mean, if the facts are that this woman with American children is going to be deported because of the way she described that incident, it's something you might want to take into account. But we're happy to have you here presenting the arguments, and I think you've presented your arguments well. Thank you very much, Your Honor. Thank you. Thank you. Very briefly, I think Judge Reinhart pretty much addressed Fernandez-Ruiz and Judge Smith's question. Although I would – I wasn't trying to answer Judge Smith's question. I would add, though, that – You could give him full authority to do that, and he does that all the time. The one point I would add about Fernandez-Ruiz, having gone back and looked at it, is that in Fernandez-Ruiz the court actually discussed potential situations where there could be an argument about a change of law, giving the government leave to go back. And here the government hasn't argued it. They didn't even argue it in their latest brief, that they had relied on anything in not building out a better record or seeking to apply the model. They didn't rely on pre-Pacheco law. Is that what you're saying? Yes. Okay. So I also very briefly want – That doesn't answer Judge Smith's question to you about a case of change of burden. My worry is that you can put this case in the case that Honorable Reinhart gave you and gave you some heads-up on that case, but I'm not sure that that case in the situation in which we find ourselves now would be enough to undo the drastic change of Sandoval Lua. That's why I put it to you. Because Sandoval Lua is a total change in who even has the burden and who has the burden to put the documents in. Now that had not been on the record, and so the obvious idea from what Judge Fletcher suggested to you, when the IJ says categorical, done, and the government doesn't have any idea otherwise that they need to even categorical, they still need to put in more documents, because the record and the precedent doesn't say that they have a burden, then why should we go there? Why should we not say, okay, in this instance, it just isn't enough. We ought to give the government the chance. Your Honor, I didn't brief this. I don't really have a good answer for you. If I may just very briefly on Hernandez, I think you touched on a lot of the problems with the good moral character finding there. I think we're very, very close to the Ordonez-Torres situation here in terms of what this guy said, didn't say, what assumptions you make about when he said it. The record isn't sufficient. And finally, just on this issue of mediation, I'm not Petitioner's lawyer, so I can't really speak to their side of the equation, but I would just ask that the Court consider, in light of what are serious concerns about the performance of counsel, that the Court consider maybe doing something about appointing them counsel to help them out with mediation, if that's where it goes. All right, we'll make certain I think that your designation or somehow is not limited to this hearing. You may want to be limited to this hearing, but you just got the heavy burden that it may not be. Thank you, Your Honor. On that particular situation, I would say, and I'm borrowing from my Honorable Fletcher here, because he was the Chief Judge on a panel in which I was sitting, we especially appreciate those who do pro bono assistance in these situations and the hard work that you give to those situations. We can't thank you enough for that. Thank you. We appreciate the opportunity. Thank you all very much. Thank you both for your excellent work, and let's hope this all comes to a happy outcome for everybody.
judges: Reinhardt, W Fletcher, Nr Smith, Cjj